STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles K. LEE, Defendant-Appellant.

Court of Appeals

*No. 78–449–CR. Argued January 24, 1980.—Decided May 27, 1980.*
(Also reported in 294 N.W.2d 547.)

For the defendant-appellant, there was a brief and oral argument by *William D. Whitnall* of Racine.

For the plaintiff-respondent, there was a brief submitted by *Bronson C. La Follette,* attorney general, and

*David J. Becker,* assistant attorney general. Oral argument by *David J. Becker.*

Before Voss, P.J., Brown and Bode, J.J.

BROWN, J.   In this case, police had an arrest warrant for Oliver Scott Johnson but arrested Charles K. Lee by mistake, thinking him to be Johnson. Subsequent to Lee's arrest, a house search was conducted producing a suitcase full of marijuana. Lee was charged and convicted of possession of marijuana with intent to sell. He claims that his arrest is invalid because there were no reasonable, articulable grounds for police to believe he was the intended arrestee. We agree and reverse.

Police were looking for Oliver Scott Johnson because he allegedly stole an automobile. Following the issuance of an arrest warrant, police received information that Johnson might be found at his sister's apartment. The only other information police knew about Johnson was that he was a young white man.

Police went to the apartment of Johnson's sister and knocked on the door. A young white man came to the door wearing only a pair of pants. The police asked him if he was Oliver Scott Johnson, and he said he was not. Although there is some dispute as to what first name was given to the police, it is clear that he told police his last name was Lee. The police asked for identification, but Lee said that he had none on his person at the time. Lee did say that Ann Johnson, who was Oliver Johnson's sister, could verify that he was Lee and not Oliver Johnson. The police asked to use the telephone so that they could confirm Lee's story, but Lee told them the apartment had no telephone, and they would have to telephone elsewhere.

One of the officers radioed a squad car to stop by Mrs. Johnson's place of employment and to determine if she knew who was in her apartment. The squad car then

contacted Ann Johnson and confirmed that the person in her apartment was Lee and not Oliver Scott Johnson. In the meantime, however, the police officers had decided to arrest Lee without first waiting for the confirmation from the squad car. Once Lee was put under arrest, the police officers told Lee that he would have to change clothes before coming with them to the police department. The police then followed Lee into the apartment in order to keep watch over him while he changed clothes. Near the kitchen, in plain view, one of the officers observed marijuana seeds and stems. He then ordered Lee to sit in a chair while a "sweep search" of the apartment was conducted. The sweep search produced a suitcase full of marijuana bags. Although the validity of the sweep search is also questioned on this appeal, we need not reach it.

Both the state and Lee urge us to adopt *Sanders v. United States,* 339 A.2d 373 (D.C. App. 1975). The *Sanders* case deals with situations where contraband is taken from an individual other than the one against whom the warrant is outstanding. Finding no previous Wisconsin cases dealing with the subject and believing that *Sanders* is good law, we adopt it. The teaching of *Sanders* is that evidence is properly admissible against the person mistakenly arrested as long as: (1) the arresting officer acts in good faith, and (2) has reasonable, articulable grounds to believe that the suspect is the intended arrestee. *Sanders, supra,* at 379. The *Sanders* court went on to explain:

Should doubt as to the correct identity of the subject of warrant arise, the arresting officer obviously should make immediate reasonable efforts to confirm or deny the applicability of the warrant to the detained invidual [sic]. If, after such reasonable efforts, the officer reasonably and in good faith believes that the suspect is the one against whom the warrant is outstanding, a protec-

tive frisk pursuant to the arrest of that person is not in contravention of the Fourth Amendment. *Cf. Patterson v. United States,* D.C. App. 301 A.2d 67 (1973); *United States v. McCray,* 468 F.2d 446 (10th Cir. 1972). [Footnote omitted.] *Sanders, supra,* at 379.[1]

The *Sanders* rationale is an outgrowth of *Hill v. California,* 401 U.S. 797 (1971), and its progeny. In *Hill,* two men who were arrested for the possession of narcotics were found also to have the fruits of a robbery. The two men named Hill as a fellow participant and said additional stolen property was in Hill's possession at his apartment. Officers proceeded to Hill's apartment to make a warrantless arrest and were met by a man named Miller who fit Hill's description. They arrested Miller, believing him to be Hill, and searched the apartment. They found the stolen property they were looking for. Miller was released two days later. Hill contended that the search was based on an invalid arrest of Miller and that the evidence seized should be inadmissible. The Supreme Court disagreed, finding:

[n]o reason to disturb either the findings of the California courts that the police had probable cause to arrest Hill and that the arresting officers had a reasonable, good-faith belief that the arrestee Miller was in fact Hill, or the conclusion that "[w]hen the police have probable cause to arrest one party, and when they rea-

---

[1] *Sanders* did not focus on the conduct of anyone other than the arresting officer. The Court did, however, entertain the following footnote which we feel worthy of reiteration:

[T]he principles enunciated would seem to apply to other stages of the inquiry and arrest process, so that irrational, unjustified, or bad faith conduct by others involved in the procedure also could vitiate an arrest. As noted, for example, the "good faith of the officers on the scene cannot remedy the improper instruction to make a purposeless, warrantless arrest." *United States v. Holmes,* 452 F.2d at 261. *See also Hill v. California, supra,* 401 U.S. at 804, 91 S. Ct. 1106. *Sanders v. United States,* 339 A.2d 373, 379 n. 5 (D.C. App. 1975).

sonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." [Citations omitted.] *Hill, supra,* at 802.

The court in *Hill* paid particular attention to the similarity of descriptions between Hill and Miller. The court noted:

At the preliminary hearing and trial, the only disparities in description established were that Miller was two inches taller and 10 pounds heavier than Hill. *Hill, supra,* at 803 n. 6.

The court in *Hill,* therefore, found that the police had reasonable grounds to believe that Miller was in fact Hill. Therefore, the resultant search was justifiable. The *Hill* case, of course, was limited to the effect of Miller's arrest on Hill, the intended arrestee. The question was not what evidence would have been admissible against Miller, the person mistakenly arrested.

The *Sanders* case addressed the issue not addressed in *Hill.* In *Sanders,* the police stopped a suspicious looking person on the street and inquired as to the person's identification. The person said that his name was "Sanders." The police then let him go but asked for information on Sanders anyway. Headquarters came back with a report that this Sanders was really a man named Saunders and that he was wanted in connection with a crime in Arlington County, Virginia. The police then hailed Sanders again and asked him if he had ever been in the Arlington County jail. Sanders replied that he had been, and he was subsequently arrested. A gun was found on his person, and he was arrested for possession of that firearm. The court found that the police had reasonable articulable grounds to believe that the suspect was the intended arrestee even though it later turned out that the Sanders who was arrested was different from the Saunders who had fled from Arlington County. The names

were nearly identical and the descriptions were identical. *Sanders, supra,* at 378 n. 4.

Discussions relating to what constitutes reasonable grounds to believe that the suspect is the intended arrestee have been articulated in several cases besides *Hill* and *Sanders.* In *United States ex rel. Kirby v. Sturges,* 510 F.2d 397 (7th Cir. 1975), the arrest and ultimate search of the wrong man was upheld because the defendant looked just like a fugitive's picture which was carried in a police bulletin. The physical description also matched. This similarity justified officers in a stop and request for identification. The identification process, conducted in plain view of the officers, allowed the officers to observe stolen traveler's checks in the person's possession. The conviction was upheld.

In *United States v. Riggs,* 347 F. Supp. 1098 (E.D.N.Y. 1972), police were instructed to watch for a "Cynthia Joyce Griggs," a known drug dealer, who was supposed to be on an incoming flight from Detroit to New York for the purpose of making a buy. Cynthia Joyce Griggs, a black woman, was traveling under the name of "P. Griggs" and was wearing a brilliant orange coat, large gold hoop earrings and carried no luggage. The police observed "P. Griggs" arrive in New York and leave the airport in a cab. Later in the day, a black woman, wearing a brilliant orange coat, large gold hoop earrings, carrying no luggage and otherwise answering the same description as "P. Griggs" prepared to depart on a one-way flight to Detroit under the name of "Miss F. Riggs." Michigan State Police then asked the New York officials to arrest "Miss F. Riggs" believing her to be the one and the same "P. Griggs." The officials arrested her, searched her and found narcotics. "Miss F. Riggs" was in reality Fairh Riggs and not Cynthia Griggs. The court found the police had reasonable grounds to believe the suspect was the intended arrestee.

In *United States v. Rosario*, 543 F.2d 6 (2nd Cir. 1976), on the other hand, the Court refused to uphold an arrest of a suspect mistakenly believed to be the intended arrestee since the description was so general that it "fit a very large group of ordinary young men." *Rosario, supra,* at 8. The Court said the officers did not obtain enough additional information prior to the arrest to have probable cause to arrest Rosario. Significant in the Court's ruling is that Rosario's first name, Angel, an unordinary name, was not considered sufficient reasonable cause for police officers to believe that the suspect was the intended arrestee even though the intended arrestee was named "Angel."

In this case, we find the police had no reasonable, articulable grounds to believe that the suspect was the intended arrestee. There was no description of Oliver Scott Johnson other than that he was a young white male. This description is so general that it fits a very large group of ordinary young men.

We also find no significance in the fact that Oliver Scott Johnson was supposed to be residing at his sister's apartment, and instead Lee was there. We disagree with the state's assertion that because Oliver Scott Johnson was believed to be living at his sister's apartment, any young white man who answers the door clad in a pair of pants and providing no immediate proof of identification can be arrested without the necessity of obtaining more reliable information. If we were to hold for the state, we could see a particularly anomalous result arising. We envision any police officer, on the barest of information, being able to enter a person's home without consent on the strength of knowing only that a suspected offender of our criminal statutes is known to stop at the home from time to time. The police could arrest anyone fitting the most general description of the suspected offender and gain entry on the pretext

that the arrested person is not properly dressed. The police could then motivate the arrested person to go into the apartment to get dressed thus allowing a "sweep search." We cannot sanction that result.

The officers in this case had doubt as to the correct identity of the subject. This is borne out by the police attempts to verify Lee's protestation that he was not the intended arrestee. Doubt as to the correct identity is also supported by one of the officer's remarks that when he found the suitcase full of marijuana, he told "Oliver Johnson or whoever he was that he was under arrest for possession of marijuana." The case shows a reasonable effort to gain more reliable information from Ann Johnson but no reasonable explanation why the police did not wait for that information before arresting Lee. There is no evidence of exigent circumstances justifying the arrest and subsequent entry prior to the gaining of the reliable information from the squad car. Lee was clad only in pants. One of the officers could easily have detained him at the door to prevent escape while the check on Lee's identity was being processed by the squad car.

We, therefore, find the seizure of Lee to be invalid and with that, the subsequent search is invalid.

*By the Court.*—Judgment and orders reversed.