[No. 50284-6.   En Banc.   September 6, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD CHARLES SMITH, *Petitioner.*

*Jonathan S. Cole* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *David Merrell, Deputy,* for respondent.

ROSELLINI, J.—Petitioner Donald Smith seeks reversal of a Court of Appeals decision affirming his juvenile court conviction for possession of "chako sticks", in violation of Seattle City Code 12A.14.070(a). Smith contends that the chako sticks were seized pursuant to an illegal search. Juvenile Court Commissioner Stone denied petitioner's

motion to suppress, finding the search necessary for the protection of the officers. The Court of Appeals affirmed, finding the search and seizure to be valid under *Illinois v. Gates,* ___ U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). We reverse.

At the juvenile court hearing, Seattle Police Officers Kennedy Conder and Richard Ninomiya described the circumstances of Smith's arrest as follows: After roll call on March 20, 1982, Conder telephoned "the screener from the Youth Service Center, Mr. Bob Burnside," and asked him "if he had any people he wanted us to bring in". Burnside told Conder that a 16–year–old male by the name of Kevin Perrin had escaped from Echo Glen and that there was an outstanding warrant for the boy's arrest. At no time during the proceedings was the actual existence of the warrant for Kevin Perrin ever proven or confirmed. Burnside described Perrin as a brown–haired, white male, 5 feet 10 inches tall, weighing 145 pounds, with a tattoo on each hand. Burnside specified that the tattoo on the boy's right hand was of a fruit dish or fruit bowl. The tattoo on his left hand was of a cross. Burnside also told Conder that Perrin had "been seen in the area of Second and Union, First and Pike, in the previous few evenings." Conder testified that he had "no idea how credible that information [about Perrin's whereabouts] was because [Burnside] got that information from some other street kids."

Shortly thereafter, near First and Union, Conder and Ninomiya saw a "white male, sixteen, 145, 5'10", light brown hair," standing on the sidewalk. The officers approached the boy, identified themselves, and "asked the individual if [they] could talk to him for a few minutes." Before they "proceeded much farther than that, [they] decided it would probably be a good idea to check him for weapons as it is a high crime area and a fairly violent area—First and Pike." Conder testified that it was "doubly necessary for us to check him for weapons" because they had never seen him before. When Officer Ninomiya patted the boy's legs, he discovered and seized the chako sticks.

After conducting this search, the officers checked the boy's right hand for tattoos. They saw "just like a half circle or something; it was just a plain ink mark as compared to a fruit bowl." Officer Conder could not remember at the hearing whether they also checked the boy's left hand. Officer Ninomiya remembered seeing a tattoo on the boy's left hand, but he could not remember what it looked like.

The officers also asked the boy his name. Petitioner had no identification on his person, but told the officers that he was not Kevin Perrin, that his name was Donald Smith, nicknamed Igor, and that his identity could be verified by Capitol Hill police officers. The officers took Smith to the police station, where other officers eventually confirmed that he was in fact Donald Smith. Prior to release, Smith was cited for possessing chako sticks.

■ The general rule is that an official "seizure" of a person must be supported by probable cause, even if no formal arrest is made. *State v. Broadnax,* 98 Wn.2d 289, 293, 654 P.2d 96 (1982); *Dunaway v. New York,* 442 U.S. 200, 208, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979). There is an exception to this general rule which permits an officer to briefly detain and question a person reasonably suspected of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The narrow scope of the *Terry* exception permits an officer to briefly detain, for limited questioning, a person whom he reasonably suspects of criminal activity and to frisk the person for weapons if he has reasonable grounds to believe the person to be armed and presently dangerous. *Broadnax,* at 293–94; *State v. Hobart,* 94 Wn.2d 437, 441, 617 P.2d 429 (1980). The suspicion of dangerousness must focus particularly on the individual searched, not simply upon the area in which he is found. *Broadnax,* at 295; *Ybarra v. Illinois,* 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979). Here, the officers did not articulate any factors which led them to believe that petitioner, in particular, was armed or dangerous. They testified instead that it is their general practice to frisk anyone they have to approach and question in that

area of Seattle. This type of generalized suspicion is simply not sufficient to justify a frisk under *Terry. See Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979) (Fourth Amendment); *State v. Larson,* 93 Wn.2d 638, 645, 611 P.2d 771 (1980) (Const. art. 1, § 7).

In recognition of the limited scope of a *Terry* patdown, the State's alternate position is that the police had probable cause to arrest petitioner, not simply a reasonable suspicion for a *Terry* detention. If the police did have probable cause to make an arrest, the search of petitioner's person and the seizure of the "chako sticks" can be upheld as a valid search incident to the arrest. *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983) (Const. art. 1, § 7); *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969) (Fourth Amendment).

 An arrest either "with or without a warrant must stand upon firmer ground than mere suspicion . . .". *Wong Sun v. United States,* 371 U.S. 471, 479, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). The officer must instead possess "probable cause—evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed . . .". *Wong Sun,* at 479, quoting *Carroll v. United States,* 267 U.S. 132, 162, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). In the context of this case, "probable cause" means cause to believe that petitioner was the "Kevin Perrin" named in the arrest warrant. *See Hill v. California,* 401 U.S. 797, 28 L. Ed. 2d 484, 91 S. Ct. 1106 (1971) (upholding search of one Miller where the police had probable cause both to arrest a person named Hill and to believe that Miller was Hill). In *Sanders v. United States,* 339 A.2d 373, 379 (D.C. 1975), the rule was first articulated that evidence is properly admissible against a person mistakenly arrested as long as arresting officers act in good faith and have reasonable, articulable grounds to believe that the suspect is the intended arrestee. Where the warrant is constitutionally valid, the seizure of an individual other than the one against whom the warrant is outstanding is valid if the arresting officer (1) acts in good faith, and

(2) has reasonable, articulable grounds to believe that the suspect is the intended arrestee. Should doubt as to the correct identity of the subject of warrant arise, the arresting officer obviously should make immediate reasonable efforts to confirm or deny the applicability of the warrant to the detained individual. If, after such reasonable efforts, the officer reasonably and in good faith believes that the suspect is the one against whom the warrant is outstanding, a protective frisk pursuant to the arrest of that person is not in contravention of the Fourth Amendment.

The *Sanders* court found that the police had reasonable, articulable grounds to believe that the suspect was the intended arrestee where the names were nearly identical and the descriptions were identical. *Sanders,* at 378 n.4.

In *State v. Lee,* 97 Wis. 2d 679, 294 N.W.2d 547 (Ct. App. 1980), the Wisconsin court held that the *Sanders* test was not met where the sole grounds for the arrest were that the individual fit the description of the suspect as a young, white male located at a particular residence and he was unable to provide immediate proof of identification. *See also State v. Frazier,* 318 N.W.2d 42 (Minn. 1982); *United States v. McEachern,* 675 F.2d 618 (4th Cir. 1982).

Here, the officers' belief that petitioner Smith was in fact Perrin was based upon the Youth Services screener's warrant description of Perrin. The officers' initial observations of petitioner corroborated only that petitioner matched the general physical description of Perrin. The officers did not attempt to verify the more specific information concerning the tattoos until after they conducted the search. The mere fact that petitioner fit the description of a brown–haired, white male, 5 feet 10 inches tall, weighing 145 pounds, is insufficient to meet the *Sanders* test of reasonable, articulable grounds to believe that the suspect is the intended arrestee.

The State contends that this information taken together with the "street kids'" tip that Perrin had been seen in the area of Second and Union, First and Pike, in the previous few evenings was sufficient to raise the information to the

level of probable cause for the arrest.

█ This court has held that an informant's tip may constitutionally provide police with grounds to stop a person *only* if it demonstrates some "indicia of reliability". *State v. Sieler,* 95 Wn.2d 43, 46–47, 621 P.2d 1272 (1980). In *Sieler,* this court enumerated the required criteria which must be met to create these "indicia of reliability":

> While the police may have a duty to investigate tips which sound reasonable, [1] absent circumstances suggesting the informant's reliability, or some corroborative observation which suggests either [2] the presence of criminal activity or [3] that the informer's information was obtained in a reliable fashion, a forcible stop based solely upon such information is not permissible.

*Sieler,* at 47. This term we held that Const. art. 1, § 7 requires adherence to the 2–prong test of *Aguilar–Spinelli* in evaluating informants for probable cause determinations. *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). The 2–prong test requires information that establishes (1) the basis for the informant's conclusion that the evidence will be found in a particular location, and (2) the basis for the officer's conclusion that the informant is credible or his information reliable.

It is evident that petitioner's arrest is invalid under the *Aguilar–Spinelli* rule. The officers were led to petitioner by unnamed "street kids" whose reliability the officers themselves apparently questioned. The officers had no information indicating the basis of these informants' knowledge. Nor did the "street kids" supply the officers with any factual details from which the officers could have concluded that their tip was based upon personal knowledge. Additionally, the officers' initial observations corroborated only that petitioner matched the general physical description of the boy they were looking for. The police did not attempt to verify the more specific information provided by the Youth Services screener (about the tattoos) until after they

conducted the search. When they did attempt verification, they discovered that the tattoo on petitioner's hand did not match the one on the person they were seeking.

The arrest and search of petitioner Smith was conducted without probable cause. The conviction is reversed.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J. (dissenting)—I cannot agree with the majority's conclusion that the frisk of Smith was impermissible under *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The majority implies that the sole ground upon which the police officers based their frisk was petitioner's presence in a high–crime area. While an individual's mere presence in an area known to be dangerous is not alone a sufficient ground to justify a frisk, I believe the police officers had far greater justification for this limited search.

A police officer may conduct a protective search when there is reason to believe the suspect may be armed and dangerous. *Terry,* at 30; *Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). Smith was not only present in a dangerous area. He also matched the description of an escaped juvenile. Further, Officer Conder stated that his partner had observed a "suspicious bulge" on Smith. In its ruling on the motion to suppress, the trial court noted that Officer Ninomiya had "observed a bulb in the [petitioner's] coat." This combination of factors, articulated by the police officers, clearly indicates that they were warranted in believing Smith may have been armed and dangerous. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111–12, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977). I would hold the police were justified in making this limited protective search out of a valid concern for their own safety.

I would affirm.

DIMMICK, J., concurs with DORE, J.