[No. 9180-5-III. Division Three. July 27, 1989.]

THE STATE OF WASHINGTON, *Appellant,* v. AUSTRAVERTO R. PIMINTEL, *Respondent.*

*Dennis DeFelice, Prosecuting Attorney,* and *Susan Dahl, Deputy,* for appellant.

*Joseph Ramirez* and *Ramirez & Ramirez,* for respondent.

SHIELDS, J.—Austraverto Pimintel was charged with unlawful possession of a controlled substance (heroin). The Superior Court ruled that the search of Mr. Pimintel's person was unreasonable and suppressed the admission of the evidence seized as a result of the search. The State appeals. We reverse and remand.

The facts are not in dispute. On November 17, 1987, a warrant was issued for a search of 212 W. Margaret St., Apt. A, Pasco, Washington, and for the person of a "Juan Doe, Mexican Male", approximately 21 years old, 5 feet 10 inches in height, and 165 pounds. The supporting affidavit stated that within the past 24 hours an informant had been inside 212 W. Margaret St., Apt. A, and had purchased narcotics from Juan Doe. The affidavit also stated the informant had seen additional persons purchasing drugs inside the apartment.

When officers of the Pasco Police Department and the Tri–City Metro Drug Unit tried to execute the search warrant, the people inside the apartment would not open the door. The police kicked the door open and, immediately upon entering the officers saw a gram scale with white powder residue. Next to the scale was a box of baggies.

The police discovered two Mexican males and three white females in the living room and one white male in the kitchen. The officers ordered all of them to face the wall and then frisked them for weapons. They were then detained in order for police to identify the occupants and determine who was responsible for the apartment.

Meanwhile, Mr. Pimintel entered the living room from one of the bedrooms. One of the officers ordered Mr. Pimintel to place his hands on the wall. Mr. Pimintel did so. The officer then saw Mr. Pimintel lower his right hand from the wall and reach toward his left shirt pocket. The officer ordered Mr. Pimintel to put his hand back up and then proceeded to search him. The officer discovered a cellophane plastic packet containing a tar substance in Mr. Pimintel's left front shirt pocket. Mr. Pimintel was then placed under arrest.

The Superior Court found the search of Mr. Pimentel was unreasonable and that it exceeded the scope of *Ybarra v. Illinois,* 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979), *reh'g denied,* 444 U.S. 1049, 62 L. Ed. 2d 737, 100 S. Ct. 741 (1980) and *State v. Broadnax,* 98 Wn.2d 289, 654 P.2d 96 (1982). Both *Ybarra* and *Broadnax* recite the rule that the scope of a search after a *Terry*[1] stop is generally limited to a search for weapons, and then only when a reasonable belief exists that the defendant is armed and presently dangerous. The officer in this case admitted he did not believe Mr. Pimintel had a weapon.

■ An officer may briefly detain and question a person reasonably suspected of criminal activity. *State v. Smith,*

---

[1]*Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

102 Wn.2d 449, 452, 688 P.2d 146 (1984); *State v. Broadnax, supra* at 293–94. The standard for detention is "a substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy,* 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

Here, the officer had read the search warrant and knew there was probable cause to believe narcotics were being sold in the apartment. Furthermore, drug paraphernalia was in plain view. In addition, Mr. Pimintel appeared to match the "Juan Doe" described in the search warrant. All of these factors presented a substantial probability that criminal conduct had occurred or was about to occur. Therefore, the detention of Mr. Pimintel was proper.

■ In *State v. Dorsey,* 40 Wn. App. 459, 473, 698 P.2d 1109, *review denied,* 104 Wn.2d 1010 (1985), the court held:

> If, in the course of a permissible *Terry* stop, the actions of the person being detained give rise to a reasonable suspicion that they [*sic*] possess evidence which is in danger of being destroyed or lost, then the investigating officers may take reasonable actions consistent with the initial stop to further investigate and to protect the possible evidence.

*Dorsey* makes it clear that once the person detained acts in a manner to arouse suspicion he is destroying evidence, then seizure of that specific evidence is permitted.[2] Given the fact Mr. Pimintel was properly detained, his furtive gesture to his left shirt pocket gave rise to a reasonable suspicion he possessed evidence which was in danger of being destroyed. The officer acted properly when he reached into the left pocket to protect the possible evidence.

This issue resolved, we need not address Mr. Pimintel's contentions he was not sufficiently tied to the search warrant and his mere presence did not justify the search of his person.

---

[2]Note that it was the *absence* of any suspicious gesture and the lack of any criminal activity on the part of the defendant in *Ybarra* that influenced that court to find the search of the defendant was unreasonable. *Ybarra,* 444 U.S. at 90–91.

The judgment of the Superior Court is reversed and the case remanded for trial.

THOMPSON, C.J., and GREEN, J., concur.

Review denied at 113 Wn.2d 1022 (1989).