[No. 24188–5–I.   Division One.   August 27, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD ALLEN RICE, *Appellant.*

---

*Eric J. Nielsen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Donald Raz, Deputy,* for respondent.

SCHOLFIELD, J.—Richard Allen Rice, a juvenile, appeals his adjudication of guilt for possession of cocaine. We affirm.

## FACTS

On May 22, 1988, at about 7 p.m., Seattle police officer Kenneth Saucier received a call that shots had been fired in the general location of Martin Luther King Way and South Kenyon Street. Officer Saucier was dispatched to the Kenyon Street Apartments, the only structure at that location. That location is a very high crime area to which Saucier had responded on numerous calls including shots fired,

robberies and homicides. When working with the narcotics division, Saucier had made many purchases of rock cocaine in that area.

Saucier and his partner drove into the parking lot of the Kenyon Street apartment complex. When they pulled into the parking lot, they noticed a group of juveniles walking through the lot. According to Saucier, when the juveniles saw the officers, "they started to kind of, break up into, you know, into smaller groups and start to walk off."

The officers then got out of their car and tried to stop a couple of the juveniles, but they "took off." According to Saucier, it looked like Rice was deciding whether to run or stay. Saucier told Rice to walk toward Saucier. Since Saucier was at the scene to investigate the shots fired dispatch, he had to try to get information from one or more of the persons present. Before Rice began walking toward Saucier, he hesitated slightly. As Rice walked toward Saucier, Rice kept moving his hands down toward his waistband or pockets, which, in Saucier's experience, is where weapons are usually kept. At that point, Saucier became nervous. For his safety, Saucier told Rice to keep his hands away from his pockets and to place them on the patrol car. As Rice began to do that, he made a half-turn away from the officer and stuck his hand into his pocket. Saucier then grabbed hold of Rice's wrists and told Rice to open his hand. When Rice opened his hand, a plastic baggie containing cocaine was found.

By information filed August 4, 1988, Rice was charged in superior court, juvenile department, with unlawful possession of cocaine.

Prior to trial, Rice moved to suppress the evidence on the grounds that he was illegally seized and searched. On January 4, 1989, a fact–finding hearing was held, including a hearing on Rice's motion to suppress.

Rice testified that he, a friend, and a cousin were walking from a store across the street from the Kenyon apartment complex through the Kenyon apartment parking lot when he was stopped. He was carrying a bag of candy that he had

purchased at the store. Saucier approached him and asked him what he was doing and if he had any weapons. Saucier then immediately started to pat him down. Saucier told him to throw his candy down on the ground. Rice testified that he did not think he had the right to leave.

The court denied the motion to suppress. Rice was found guilty as charged.

This appeal timely followed.

### REASONABLENESS OF THE STOP AND SEARCH

Rice argues that the officer did not have a reasonable suspicion justifying the stop in this case because the testimony does not indicate the reliability of the report that shots had been fired, and there are no facts to support a finding that Rice was in any way connected with the shots or any crime. Rice also argues that even if the detention was lawful, the subsequent search was unreasonable.

██ An officer may briefly detain and question a person reasonably suspected of criminal activity. *State v. Smith,* 102 Wn.2d 449, 452, 688 P.2d 146 (1984). A stop, although less intrusive than an arrest, is nevertheless a seizure, and therefore must be reasonable under the Fourth Amendment and article 1, section 7 of the Washington Constitution. *State v. Kennedy,* 107 Wn.2d 1, 4, 726 P.2d 445 (1986). To justify an investigatory stop, an officer must have "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Kennedy, supra* at 5. Less than probable cause is required because the stop is significantly less intrusive than an arrest. *State v. Kennedy, supra* at 6. The officer's experience will be taken into account in assessing whether a suspicion of wrongdoing was justified under the circumstances. *State v. Mercer,* 45 Wn. App. 769, 774, 727 P.2d 676 (1986).

In each case, the court must balance the interest of society in enforcing the laws against the individual's right to protection against unreasonable searches and seizures. A

determination of the reasonableness of an officer's intrusion depends in some degree on the seriousness of the apprehended criminal conduct. An officer may do far more if the suspected misconduct endangers life or personal safety than if it does not. *State v. McCord,* 19 Wn. App. 250, 253, 576 P.2d 892, *review denied,* 90 Wn.2d 1013 (1978).

In the present case, the trial court found that the officer responded to a report of shots fired, proceeded to the address given, and in the parking lot at that address saw a group of juveniles, one of whom was Rice. Many of our *Terry* stop cases are analyzed from the standpoint of suspected criminal activity by the person detained. Up to that point, Rice had done nothing that would give any indication of criminal behavior other than simply being in the parking lot. Without the report of shots being fired, being in the parking lot would have no significance. At the outset, Saucier had no reason to single out Rice as a criminal suspect. However, in order to investigate the report of shots fired, the officer had to talk to the only person who seemed available to him at the time and that was Rice.

Rice argues that the testimony does not indicate the reliability of the report that shots had been fired. He cites *State v. Smith, supra* in support of his argument that when police detain an individual based on an informant's tip, that tip must possess sufficient indicia of reliability. *See also State v. Kennedy, supra; State v. Conner,* 58 Wn. App. 90, 791 P.2d 261 (1990). However, information from a citizen informant does not require a showing of the same degree of reliability as information from a professional informant. *State v. Kennedy, supra* at 8.

Crime detection and prevention are legitimate purposes of investigative stops or detentions, and the reasonableness of an officer's actions in making a *Terry* stop must be evaluated in light of the facts known to him at the time. The test is whether a police officer can point to specific, articulable facts which indicate a "substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy, supra* at 6.

■ When Saucier initially spoke to Rice, his purpose was to learn what he could about the validity of the report that shots had been fired and, if so, the origin or reason for the shots and, if possible, who fired them. A police officer investigating a report of shots fired can do no less if a responsible response to the citizen's report is to take place. It follows that the initial effort to question Rice did not violate the constitutional prohibition of unreasonable seizures. Justification was present, and the intrusion was minimal.

Since Rice's companions had quickly vacated the parking lot and Rice appeared to Saucier to be considering running away, Saucier directed him to walk toward him. Assuming this command amounted to a seizure, it was justified as a *Terry* stop. The firing of shots indicates the presence of firearms and probable illegal conduct. While Rice argues there was no evidence that the report of shots being fired was reliable, the law does not require the same showing of reliability of citizens' complaints that pertain to informants' tips. A citizen's report of shots being fired is not directed toward any particular person and, therefore, does not carry with it the possibility of a tip motivated by hostility or other unworthy motives that can exist when a person informs on an identified person. There is no constitutional violation in allowing a police officer to assume a citizen's report has some basis when he is conducting an initial investigation of that complaint. When and if his investigation discloses the complaint has no probable validity, the assumption can no longer prevail.

Accordingly, we hold that the officer had reasonable grounds justifying an investigatory stop of Rice.

■ The issue thus becomes whether the search was justified. A police officer may conduct a carefully limited, self–protective search of a person whom he has lawfully stopped for investigation and whom he reasonably believes to be armed. *State v. Malbeck,* 15 Wn. App. 871, 873, 552 P.2d 1092 (1976) (citing *Terry v. Ohio, supra*).

Here, the trial court found that as Rice approached the officer, Rice was moving his closed hands about his waistline. The court also found that the officer felt threatened. These findings are supported by substantial evidence. Saucier was investigating a reported shots fired incident, which meant that a gun was probably in the area. As he approached the officer, Rice kept making thrusting, "fidgeting" movements toward his waist area, an area of the body Saucier knew to commonly be used to hide weapons. Rice's hands were clenched into fists. When Rice finally neared Saucier, he quickly turned and thrust his hand into his pocket. These facts support the trial court's finding that the officer felt threatened, and feeling threatened, the officer was justified in grabbing Rice's wrists and ordering Rice to open his hands.

Accordingly, the trial court properly denied Rice's motion to suppress the cocaine.

Judgment affirmed.

GROSSE, A.C.J., and PEKELIS, J., concur.