IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30762-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN CARLOS RODRIGUEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Police stopped the only car in the area at 3:00 a.m. as they sought a vehicle fleeing a shooting. The trial court concluded that there was articulable suspicion justifying the traffic stop. We agree and affirm Juan Carlos Rodriguez's conviction for first degree unlawful possession of a firearm.

FACTS

Just before 3:00 a.m. on New Year's Day 2012, Moses Lake police received a report of a fight with gunshots fired at 906 W. 4th Ave. Dispatch informed officers that the vehicle left in the direction of the "Hang Out Tavern," but there was no description of the vehicle or its occupants. Moses Lake Police Officer Paul Ouimette responded and within two minutes of the call, he came upon the vehicle driven by Mr. Rodriguez on 4th

Avenue about six blocks from the address of the shooting. There were five young men in the car, but he could clearly see only the two in the front seat.

Officer Ouimette became suspicious that this vehicle was involved in the shooting and started following it. The car was travelling in excess of the speed limit[1] (35 m.p.h. in a 25 m.p.h. zone), heading in the direction indicated by dispatch, and there were no other moving vehicles in the area. After receiving word that another officer was nearby, Officer Ouimette attempted to stop Mr. Rodriguez's vehicle.

Mr. Rodriguez did not immediately stop. Officer Ouimette followed at normal speeds with his lights and siren activated for another mile before Mr. Rodriguez finally stopped. During this time, the officer observed the vehicle occupants moving in their seats as if trying to conceal objects or get access to the trunk. One passenger fled the scene. Once the officer got the remaining occupants out of the car, he searched the vehicle for weapons for safety reasons. A revolver was located under the driver's seat.

A single charge of unlawful possession of a firearm was filed. The defense moved to suppress, arguing that the officer lacked reasonable suspicion to stop and investigate the car. The trial court disagreed, concluding that the stop was justified.

---

[1] Although the officer testified to the speed at the hearing, the court's findings do not include this fact and we do not further consider it in our analysis.

The case proceeded to a one day jury trial. The jury found Mr. Rodriguez guilty of first degree unlawful possession of a firearm. After the court imposed a standard range sentence of 24 months in prison, Mr. Rodriguez timely appealed to this court.

## ANALYSIS

The sole issue in this case is whether the officer's initial decision to stop the vehicle was valid. We agree with the trial court that there was articulable suspicion supporting the seizure.

A seizure occurs when a person is not free to leave because of physical force or a show of authority. *State v. Young*, 135 Wn.2d 498, 510, 957 P.2d 681 (1998). An officer may seize a person to investigate possible criminal activity if the officer has an articulable suspicion, based on objective facts, that a person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). An officer also has the ability to maintain his personal safety and can frisk a subject or conduct a brief search for weapons if there is an articulable reason for believing they may be present. *Terry*, 392 U.S. at 29-30; *Kennedy*, 107 Wn.2d at 12.

The parties agree that Mr. Rodriguez was seized when Officer Ouimette turned on his lights and siren and attempted to stop the vehicle. They understandably disagree

3

about whether the seizure was justified.[2] Mr. Rodriguez correctly argues that information obtained after the seizure (the refusal of the vehicle to stop, flight by a passenger, occupants dressed in gang colors) is irrelevant to whether the seizure was valid. Without that information, he argues that the remaining evidence was insufficient to justify the stop. While it is a close call, we disagree.

The officer knew that shots had been fired and arrived in the vicinity in just two minutes. He knew that the shooter had fled in a vehicle headed in a certain direction. As he reached the vicinity, he encountered a car headed in the same direction as the suspect vehicle only six blocks from the scene. The car was full of young men. There were no other vehicles on the road; it was the middle of the night. We think on these facts the officer understandably thought the vehicle was involved in the incident and might even be the one he sought. At a minimum, he could articulate facts that explained why this might be the vehicle he sought—it was leaving the area in the direction reported and there were no other moving vehicles in sight. Under these circumstances, a brief stop to confirm suspicions was justifiable.

---

[2] There is no challenge to the search of the car that resulted in a handgun being located underneath the driver's seat.

4

The facts here are analogous to a different "shots fired" case that did not involve a traffic stop. *State v. Rice*, 59 Wn. App. 23, 795 P.2d 739 (1990). There, as here, an officer responded to a location where there had been a "shots fired" report. *Id*. at 24. The officer saw several young men at the scene; all but one of them bolted upon the officer's approach. He ordered the remaining young man, who looked like he was about to flee, to remain and talk to him.[3] *Id*. at 25. This court concluded that it was reasonable to seek to talk to the young man who remained at the "shots fired" location. *Id*. at 27. The decision to seize the young man in order to learn about the shooting was justified under *Terry*. *Id*. at 28.

This case is similar to, if not stronger than, the facts in *Rice*. The incident being investigated was the same. The car was the only one in the vicinity in the middle of the night and it was headed in the same direction the suspect vehicle had been reported heading. Those facts suggested that not only might the car's occupants have information about the shooting incident, they were likely involved since they were departing the scene along the suspect vehicle's flight path.

---

[3] When the young man removed his hand from his pocket at the officer's command, a baggie of cocaine was discovered. *Rice,* 59 Wn. App. at 25.

5

No. 30762-0-III
*State v. Rodriguez*

Accordingly, we conclude that the trial court did not err in denying the motion to suppress. The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, J.

6