IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                       Respondent,<br><br>     v.<br><br>JAMES ROBERT SCHEIBE,<br><br>                  Appellant. | No. 81839-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — A jury found James Scheibe guilty of second degree assault, unlawful possession of a firearm in the second degree, domestic violence court order violation, and two counts of reckless endangerment. On appeal, he says the trial court erred in denying his motion to suppress statements made to law enforcement because reasonable suspicion did not support his Terry[1] stop. But Scheibe waived this argument. And he does not establish ineffective assistance of counsel or the deprivation of his right to present a defense. We thus affirm.

## I. BACKGROUND

A. Facts

1. The incident

Scheibe and M.S. were in a relationship. They have a son, W.S. After the relationship, M.S. obtained a protective order against Scheibe that prohibited him from contacting her or W.S., or owning a firearm. Yet the three still saw each other despite the order because M.S. wanted her "son's father to be in his life."

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Citations and pin cites are based on the Westlaw online version of the cited material.

One day, M.S. took W.S. to a relative's property where Scheibe was staying. M.S. testified that she went there to check on a relative with an injury; Scheibe testified that she went there seeking drugs. While M.S. was still in her vehicle, they began arguing about whether Scheibe could see W.S. the next day for Father's Day. M.S. testified that at that point, Scheibe pulled out a gun and pointed it at her. Scheibe testified that he did not do so and did not have a gun that day. He did say that he punched her vehicle.

M.S. quickly tried to pull out of the driveway with W.S. in the back seat. She testified that Scheibe was standing in front of her vehicle with a gun, and she was reversing out of the driveway away from him. Scheibe testified that as M.S. turned her vehicle around, he stepped in front of it to stop her from leaving, and she intentionally hit him with her vehicle. M.S. then heard a gunshot; she did not see Scheibe firing a gun. Scheibe told a deputy that the gun was in his hip holster and discharged when M.S. hit him; but he testified at trial that he did not have a gun and did not fire one that day.

Scheibe then jumped onto M.S.'s vehicle while it was moving, though they dispute which part of it he jumped onto. M.S. testified that in doing so, Scheibe blocked her view and she was unable to see an oncoming vehicle. The vehicles collided. Multiple neighbors called 911 to report an accident and a gunshot. One neighbor testified that after the accident, he heard M.S. ask Scheibe why he was shooting at her.

2.  The initial seizure and later arrest

Several Clark County Sheriff deputies arrived and used a squad car as a "rolling bunker" to approach the scene.  Unprompted, Scheibe walked into the middle of the road with his hands in the air.  The deputies immediately seized him and placed him in handcuffs while they assessed the scene.  They patted Scheibe down to check for weapons.  They found knives, syringes, and a shoulder holster but no gun.  The deputies searched the area and found a gun under a nearby container.  They also recovered a spent shell casing at the scene.  A deputy testified at trial that it appeared to be from the gun that they found.

After handcuffing Scheibe, Deputy Eric Swenson read him his Miranda[2] rights and told him he was not yet under arrest.  Then, Scheibe made three sets of statements to the deputies.

First, Scheibe answered a series of questions from Swenson.

Second, about 30 minutes after they handcuffed him, deputies placed Scheibe under arrest and took him to a squad car.  Scheibe asked Swenson whether he could see or speak with M.S. or W.S. and the deputy denied the request.

Third, on the way to the Clark County Law Enforcement Center, Scheibe made the unsolicited statement to Deputy Thomas Maxfield that he was only trying to see his child.  Maxfield asked him some follow up questions and Scheibe told him that M.S. was at the property that day to "score" some

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

methamphetamine, she had tried to run him over, and when she hit him with her vehicle, "the gun went off."

B. Procedural History

The State ultimately charged Scheibe with second degree assault, unlawful possession of a firearm in the second degree, domestic violence court order violation, and two counts of reckless endangerment.

Before trial, Scheibe moved to suppress the three sets of his statements, arguing that law enforcement obtained them in violation of Miranda. The trial court suppressed the first set of statements, concluding that Scheibe did not waive his Miranda rights with respect to them, but it admitted the second and third sets, concluding that he impliedly waived Miranda before making them.

During hearings on the suppression issue, Scheibe says that when deputies handcuffed him, an arrest occurred. And he contended that the deputies lacked probable cause to arrest him and sought exclusion of his statements on that ground. The State responded that the initial seizure constituted a lawful Terry stop and not an arrest. Scheibe did not respond to this contention; he did not argue that any Terry stop was unsupported by reasonable suspicion. The trial court determined that a Terry stop occurred when deputies handcuffed Scheibe, that the stop was lawful, and that a lawful arrest followed. Based on these determinations, the trial court concluded that law enforcement did not obtain Scheibe's statements unlawfully and denied his motion to suppress his second and third sets of statements.

4

During the State's case-in-chief, M.S., neighbors, and responding deputies testified. M.S. testified that she had seen Scheibe throw the gun under the container where the deputies found it. She identified the gun as the one Scheibe pointed at her. The trial court admitted the gun, the shell casing, and the shoulder holster into evidence.

During the defense's case-in-chief, Scheibe and his girlfriend, Charlotte Frias, testified. As mentioned above, Scheibe denied possessing a gun, "pulling" one on M.S., or shooting one on the date of the incident. Frias testified that the gun belonged to her former boyfriend, Zachary Randall.[3] To argue that Randall was framing him, Scheibe sought to introduce testimony that Randall had tried to frame him in the past by accusing him of taking the same gun. The trial court excluded the testimony.

A jury found Scheibe guilty on all counts. He appeals.

## II. ANALYSIS

### A. Terry Stop and Later Statements

Scheibe says that law enforcement lacked reasonable suspicion for his Terry stop, thereby rendering the statements he made later inadmissible. He thus claims the trial court erred in denying his motion to suppress the statements.[4] The State counters that Scheibe cannot raise this issue for the first

---

[3] M.S. also testified that the gun belonged to Randall.

[4] Scheibe also assigns error to the trial court's findings of fact and conclusions of law leading to the admission of the same sets of statements, apparently contending they resulted from a Miranda violation. Scheibe presents no argument on this claim of error in his brief. The State does not respond to this claim, presumably because Scheibe makes no argument. Thus, we do not address it. See Sprague v. Spokane Valley Fire

5

time on appeal.  Scheibe does not respond to the State's argument or otherwise argue a lack of waiver.  The State also says that reasonable suspicion supported the Terry stop.  We conclude that Scheibe waived this argument.

We generally "refuse to review any claim of error which was not raised in the trial court."  RAP 2.5.  Exceptions to this rule include: "(1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right."  RAP 2.5.  For us to conclude such an exception applies to a claim of error, the appellant must explain how it so applies.  See State v. Lindsey, 177 Wn. App. 233, 247, 311 P.3d 61 (2013) (declining to address a claim of error when the party failed to argue any exception to RAP 2.5(a) applied).  To benefit from the third exception—the only one that could conceivably apply here—an "appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'"  State v. Gordon, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (alteration in original) (quoting State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)).

Scheibe failed to preserve his claim of error before the trial court.  He moved to suppress the three sets of statements described above.  But his motion focused almost entirely on the argument that he had not waived his Miranda rights.[5]  And as discussed above, at the hearings on the motion, Scheibe also

---

Dep't, 189 Wn.2d 858, 876, 409 P.3d 160 (2018) ("We will not consider arguments that a party fails to brief.").

[5] The motion to suppress says that "an illegal seizure may have occurred" but it is unclear if it is referring to a seizure of Scheibe's person or his belongings; and if it is referring to his person, whether it is referring to an arrest or a Terry stop.

said that his initial seizure—when deputies arrived at the scene and handcuffed him—constituted an arrest unsupported by probable cause. At no point did Scheibe say, as he does on appeal, that the detention was a Terry stop unsupported by reasonable suspicion. We may thus decline to address this claim of error unless an exception applies.

As noted above, on appeal, Scheibe offers only silence on the waiver issue. He does not argue that a RAP 2.5 exception applies, and though he identifies a Fourth Amendment seizure issue, he does not identify how the claimed error was manifest. An appellant must make these arguments explicitly. See Lindsey, 177 Wn. App. at 247 (declining to address a claim of error when the party failed to argue any exception to RAP 2.5(a) applied), State v. Bertrand, 165 Wn. App. 393, 402, 267 P.3d 511 (2011) (declining to address appellant's claim of error where she neither "argues nor shows that the instructional error was 'manifest'"). We may thus decline to address Scheibe's argument that reasonable suspicion did not support the Terry stop.[6]

---

[6] And even assuming Scheibe did not waive the argument, it appears clear that reasonable suspicion supported the stop. A Terry stop is lawful "if specific articulable facts give rise to a reasonable suspicion that the person stopped is or has been involved in criminal activity." State v. Alexander, 5 Wn. App. 2d 154, 159, 425 P.3d 920, review denied, 192 Wn.2d 1026, 435 P.3d 270 (2019); Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968). "When an officer bases his or her suspicion on an informant's tip, the State must show that the tip bears some 'indicia of reliability' under the totality of the circumstances." State v. Z.U.E., 183 Wn.2d 610, 618, 352 P.3d 796 (2015) (quoting State v. Sieler, 95 Wn.2d 43, 47, 621 P.2d 1272 (1980). Information from a citizen, rather than a "professional informant" is presumptively reliable. State v. Howerton, 187 Wn. App. 357, 366, 348 P.3d 781 (2015). And "a report of actual or threatened use of a firearm can present a significant risk to public safety supporting an investigatory stop." State v. Cardenas-Muratalla, 179 Wn. App. 307, 313, 319 P.3d 811 (2014); see also State v. Rice, 59 Wn. App. 23, 28, 795 P.2d 739 (1990) ("A citizen's report of shots being fired is not directed toward any particular person and, therefore, does not carry with it the possibility of a tip motivated by hostility or other unworthy

B. Ineffective Assistance of Counsel (IAC)

Scheibe says that his defense counsel performed ineffectively by failing to move for suppression of the shoulder holster. The State says it does not directly address this issue because it depends on whether we determine that an illegal seizure of Scheibe occurred. We conclude that Scheibe has not established an IAC claim.

To show ineffective assistance, a defendant must establish that defense counsel's representation was deficient and that the deficient representation was prejudicial. State v. Grier, 171 Wn.2d 17, 32–33, 246 P.3d 1260 (2011). Proving that counsel's performance was deficient requires meeting a high threshold. Id. at 33. Counsel's "performance is deficient if it falls 'below an objective standard of reasonableness,'" and we strongly presume reasonableness. Id. (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

"We review [IAC] claims de novo." In re Pers. Restraint of Lui, 188 Wn.2d 525, 538, 397 P.3d 90 (2017).

Scheibe presents a curious IAC claim. To be clear, he does not say that his defense counsel should have moved to suppress the holster on the ground that the initial seizure was an illegal Terry stop. Nor does he say that counsel's argument about the seizure was otherwise deficient. To the contrary, he says

---

motives"). It appears that reasonable suspicion supported Scheibe's Terry stop. Multiple citizens called 911 and reported a car accident and a gunshot. When law enforcement arrived at the scene, they saw a damaged car. Without prompting, Scheibe walked into the road with his hands up. He matched the description from the 911 dispatcher.

8

that counsel "argued the correct legal theory that Scheibe's initial seizure was illegal but failed to move to suppress the shoulder holster." Yet as discussed above, at trial, defense counsel argued unsuccessfully that the initial seizure was an illegal arrest; counsel did not challenge it as an illegal Terry stop. And the court rejected the argument. Given these circumstances, we determine it was reasonable for defense counsel to not move to suppress the shoulder holster as the fruit of an illegal arrest. Scheibe's ineffective assistance of counsel claim thus fails.

C. Sixth Amendment Right to Present a Defense

Scheibe says that the trial court violated his Sixth Amendment right to present a defense by excluding testimony that Randall had framed Scheibe in the past and had the motive to do so again.[7] The State counters that the testimony was irrelevant because it was speculative and lacked evidentiary support. Thus, the State says the trial court did not abuse its discretion in excluding the testimony and that Scheibe was still able to present evidence supporting his defense theory. We conclude that the trial court did not deprive Scheibe of his Sixth Amendment right to present a defense because the evidence was speculative and its exclusion did not preclude his "entire defense."

---

[7] Specifically, Scheibe says that the trial court prohibited him from testifying that Randall shot his own gun into the air and placed it under the container to frame Scheibe; that Randall had the motive to frame Scheibe because Scheibe was dating Randall's former girlfriend Frias; and that Randall had unsuccessfully tried to frame Scheibe in the past by accusing him and Frias of stealing Randall's gun. But at trial, Scheibe did not seek to introduce testimony that Randall shot his own gun into the air, instead he suggested "perhaps" that is what happened. Nor did Scheibe seek to testify specifically that the former relationship generated a motive. Thus we focus on the third issue, the earlier accusation.

Both the state and federal constitutions guarantee a defendant's right to present a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; State v. Hudlow, 99 Wn.2d 1, 14–15, 659 P.2d 514 (1983). The right is not absolute. State v. Bedada, 13 Wn. App. 2d 185, 193, 463 P.3d 125 (2020). A defendant has "no constitutional right to present irrelevant evidence." State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (emphasis omitted). A defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Bedada, 13 Wn. App. 2d at 193 (quoting Taylor v. Illinois, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)).

For claims of a violation of the right to present a defense, "we apply [a] two-step review process to review the trial court's individual evidentiary rulings for an abuse of discretion and to consider de novo the constitutional question of whether these rulings deprived [the defendant] of [their] Sixth Amendment right to present a defense." State v. Arndt, 194 Wn.2d 784, 797–98, 453 P.3d 696 (2019).

1. Review of evidentiary ruling for abuse of discretion

A trial court abuses its discretion in making an evidentiary ruling if "it makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons," which includes applying the wrong legal standard or relying on unsupported facts. State v. Cayetano-Jaimes, 190 Wn. App. 286, 295, 359 P.3d 919 (2015).

Only relevant evidence is admissible. ER 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "The proponent of the evidence bears the burden of establishing its relevance and materiality." Bedada, 13 Wn. App. 2d at 193. "The existence of a fact cannot rest in guess, speculation or conjecture." State v. Carter, 5 Wn. App. 802, 807, 490 P.2d 1346 (1971); see also Lui, 188 Wn.2d at 552 ("The standard for relevance of other suspect evidence is whether there is evidence 'tending to connect' someone other than the defendant with the crime beyond mere speculation.").

At trial, Scheibe sought to introduce his own testimony and the testimony of Frias that, on an earlier occasion, Randall had called law enforcement and accused Scheibe and Frias of taking the gun at issue. Scheibe argued that it was an attempt to get him in trouble and that the incident at issue here was a "continuation of that attempt to get him in trouble." Scheibe's counsel stated, "Perhaps [Randall] fired the shot" but did not offer any evidence to establish that fact.

The court determined that if she had the requisite personal knowledge, Frias could testify that Randall always had the gun with him and never let it out of his sight. But the court excluded any testimony about "whether or not [Randall] accused Mr. Scheibe at some period in the past" because it did not "have

11

anything to do with the case." In doing so, the court noted that Randall was not a witness and thus his motive or credibility was not at issue.

Connecting Randall's earlier accusation that Scheibe and Frias had taken his gun to Scheibe's theory that Randall was framing him would require inferential leaps. Given the speculative nature of the evidence, the court acted within its discretion by excluding the testimony. See Carter, 5 Wn. App. at 807 (the existence of a fact cannot rest in speculation); Lui, 188 Wn.2d at 552 (relevance of "other suspect evidence" requires more than "mere speculation").

2. De novo review of right to present a defense

We next conduct a constitutional analysis. State v. Jennings, No. 52275-6-II, slip op. at 7 (Wash. Ct. App. Oct. 6, 2020), http://www.courts.wa.gov/opinions/pdf/D2%2052275-6-II%20Published%20Opinion.pdf. If the evidence is relevant, courts balance "the State's interest in excluding the evidence . . . against the defendant's need for the information sought to be admitted." Arndt, 194 Wn.2d at 812. "To show a Sixth Amendment violation, the excluded evidence must be of extremely high probative value." State v. Case, 13 Wn. App. 2d 657, 670, 466 P.3d 799 (2020). Our Supreme Court has determined that an evidentiary exclusion violated the Sixth Amendment when the defendant's "entire defense" rested on the excluded evidence. Jones, 168 Wn.2d at 721. "The more the exclusion of defense evidence prejudiced the defendant, the more likely we will find a constitutional violation." State v. Burnam, 4 Wn. App. 2d 368, 375, 421 P.3d 977, review denied, 192 Wn.2d 1003, 430 P.3d 257 (2018).

The trial court's ruling did not deprive Scheibe of his right to present a defense. Unlike in Jones, where the excluded testimony was the "entire defense" because it went to the issue of consent in a rape case, the excluded testimony here did not preclude Scheibe's "entire defense." Jones, 168 Wn.2d at 721.[8] The court still permitted Scheibe to introduce evidence that he was dating Frias, that Frias was Randall's former girlfriend, that Randall wanted to get back together with Frias, that the gun that deputies found at the scene belonged to Randall, and that Randall kept the gun with him at all times. This sufficed to enable Scheibe to argue during closing that someone else, perhaps Randall, was the one to shoot the gun that day. See Arndt, 194 Wn.2d at 814 (concluding that there was no Sixth Amendment violation when the defendant was still able to present a defense despite evidentiary exclusions). And the court did not deprive Scheibe of the ability to present other evidence such as denying possession of a gun that day or attacking M.S.'s credibility and questioning her motives. The evidence was not of extremely high probative value and its exclusion was unlikely to have prejudiced Scheibe. See Case, 13 Wn. App. 2d at 670 ("To show a Sixth Amendment violation, the excluded evidence must be of extremely high probative value."); Burnam, 4 Wn. App. 2d at 375 ("The more the exclusion

---

[8] Also, the testimony offered in Jones was not speculative. The defendant sought to testify that the victim had consented to a drug-fueled sex party. Jones, 168 Wn.2d at 721. Scheibe did not seek to testify that he had personal knowledge that Randall was the one to shoot the gun; instead he sought only to testify that Randall had tried to frame him in the past.

of defense evidence prejudiced the defendant, the more likely we will find a constitutional violation.").[9]

We affirm.

_Chun, J._

WE CONCUR:

_Leach, J._    _Appelwick, J._

---

[9] Scheibe says that under State v. Duarte Vela, even if "evidence is weak or false" the court should admit probative evidence. First, the testimony here is arguably not probative, and second, entirely speculative evidence is distinguishable from "weak or false" evidence. 200 Wn. App. 306, 321, 402 P.3d 281 (2017), as amended on denial of reconsideration (Oct. 31, 2017).