166 P.3d 1235 (2007)
STATE of Washington, Respondent,
v.
Adam George GLENN, Appellant.
No. 57698-4-I.
Court of Appeals of Washington, Division 1.
September 10, 2007.
*1236 Sean P. Wickens, Armijo Wickens, PS, Tacoma, Counsel for Appellant.
William Leonard Doyle, King County Prosecutors' Office, Seattle, Counsel for Respondent.
APPELWICK, C.J.
¶ 1 Adam Glenn appeals his conviction for possession of over 40 grams of marijuana. He argues that the police violated article I, section 7 of the Washington Constitution when they searched his car based on reports that he had pointed a gun from the vehicle. He asserts that the facts do not support either the officer safety exception or the search incident to arrest exception to the privacy protections of the state constitution. Glenn also argues that he was prejudiced by the trial court's delayed entry of findings of fact and conclusions of law. We affirm.

FACTS
¶ 2 J.K., a seven-year-old boy, told his mother that a man in a passing car had pointed a gun at him from the car window, while he was playing outside. His mother called the police. She saw a car matching J.K.'s description, copied the license plate number, and reported the incident along with the license plate number to the police. King County Sheriff's Officers Minshull and Graf responded to the call. While they interviewed J.K., he pointed at a passing car, and said without any questioning that it was the same as the one from which the man had pointed a gun. When Minshull then asked *1237 him if it was the car, J.K. replied, "Yes." The officers chased the car down in separate patrol cars, stopping it within three blocks of the boy's home. They found that the plates matched the plates reported by J.K.'s mother. Both deputies testified that they were certain that they had stopped the same car identified by J.K.
¶ 3 Officers Minshull and Graf drew their weapons and ordered the driver, Glenn, out of the car. The officers testified that Glenn made no furtive or threatening movements as he exited the car, and that he got down on his knees as ordered. Glenn was handcuffed, read his Miranda[1] rights, and placed in the patrol car. He waived his Miranda rights, and said that he was the only person who operated the car. Officer Minshull remained with Glenn while Officer Graf went back to J.K.'s residence to find the eyewitness for identification. Officer Minshull searched Glenn and found over $1,100 cash in his wallet. He did not find a gun on Glenn's person.
¶ 4 King County Sheriff Officers Conner and Paul arrived at the scene as Glenn was being removed from his car. The officers testified that as they approached the open driver-side door of the car, they smelled marijuana. Officers Conner and Paul searched the unlocked portions of the passenger compartment, testifying that the primary purpose of their search was to ensure officer safety. They also testified that a warrantless search is routine where there is a credible allegation that a suspect may have a firearm. Officer Conner testified that it was his subjective belief, based on the eyewitness report, that this was a high-risk weapons stop. They wanted to search for the gun before they returned Glenn to his car. They did not find a gun in his car or in the vicinity. However, the search did reveal 250 grams of marijuana under a sweatshirt, on the floor behind the passenger seat. Officer Paul testified that it took about thirty seconds to find the marijuana, and that before that discovery, Glenn had only been in custody for two to three minutes. The officers testified that they would have returned Glenn to his car if they had not found the marijuana.
¶ 5 Glenn was arrested for possession of marijuana with intent to distribute. He was charged with one count of Violation of the Uniform Controlled Substances Act under RCW 69.50.401(a)(1)(iii), and one count of Unlawful Display of a Weapon, under RCW 9.41.270. Glenn filed a motion to suppress the marijuana, claiming that it was illegally obtained evidence from a warrantless search. At the suppression hearing, the trial court issued an oral ruling denying Glenn's motion, finding that the officers made a "minimally intrusive effort of searching the car to establish whether or not there was a weapon and the marijuana was discovered in the course of that search. It was in a place and location that was necessary to review to see if a weapon was present." Following this hearing, a bench trial was held in which Glenn was acquitted of the firearm charge and convicted of unlawful possession of more than 40 grams of marijuana.
¶ 6 At sentencing on January 13, 2006, the State submitted proposed findings to both Glenn and the trial court. However, the State failed to enter final findings with revisions from defense counsel until it was alerted about the lack of written findings when Glenn filed his appeal. Consequently, the trial court held a hearing subsequent to the filing of this appeal, heard arguments from both parties, and approved the final version of the findings that have been submitted with this record.

ANALYSIS
I. Officer Safety Exception
¶ 7 Glenn argues that the police officers' warrantless search of his vehicle during an investigative Terry[2] stop was improper under article I, section 7 of the Washington Constitution. The State contends that the search was valid as a protective search for a reported weapon in order to ensure officer safety.
*1238 ¶ 8 Article I, section 7 of the Washington Constitution provides greater protection to individuals against warrantless searches of their automobiles than does the Fourth Amendment to the United States Constitution. State v. Larson, 88 Wash.App. 849, 946 P.2d 1212 (1997); see also State v. Parker, 139 Wash.2d 486, 493, 987 P.2d 73 (1999). This is a strict rule with narrowly construed exceptions. The State bears the heavy burden of proving that a warrantless search falls within an exception. Parker, 139 Wash.2d at 496, 987 P.2d 73. One such exception applies when a valid Terry stop includes a vehicle search to ensure officer safety. State v. Bradley, 105 Wash.App. 30, 36, 18 P.3d 602 (2001) (citing State v. Kennedy, 107 Wash.2d 1, 12, 726 P.2d 445 (1986); Larson, 88 Wash.App. at 853, 946 P.2d 1212).
¶ 9 "[A] court should evaluate the entire circumstances of the traffic stop in determining whether the search was reasonably based on officer safety concerns." State v. Glossbrener, 146 Wash.2d 670, 679, 49 P.3d 128 (2002). A search for a weapon was held lawful under the officer safety exception when the police stopped a vehicle based on a report of drug related activities, and an officer witnessed the driver lean forward in a way that looked like he was hiding something in the front seat of the car. Kennedy, 107 Wash.2d at 11-12, 726 P.2d 445. There, the officer safety exception applied so long as the search was limited to the areas within the suspect's immediate control. Kennedy, 107 Wash.2d at 12, 726 P.2d 445. The same concerns also justified a similarly limited search when a suspect was pulled over for a mangled license plate, and leaned forward as if to place something under the seat. State v. Watkins, 76 Wash.App. 726, 728, 887 P.2d 492 (1995).
¶ 10 Similar furtive movements also justified a search, when an officer, in pursuit of a speeding driver, witnessed the suspect lean forward and make movements towards the floorboard of his truck. Larson, 88 Wash. App. at 857, 946 P.2d 1212. Once the vehicle was pulled over, the driver was ordered out of his truck. However, in order to facilitate the traffic stop investigation, the driver needed to return to his vehicle to obtain his registration. Larson, 88 Wash.App. at 857, 946 P.2d 1212. To ensure that there were no accessible weapons in the vehicle, the officer "stuck his head in the cab of the truck through the open door to visually inspect the area around the driver's seat," and found drug paraphernalia. Larson, 88 Wash.App. at 851, 946 P.2d 1212. Based on the officer's observations of the driver's furtive movement and the need for him to return to his vehicle, this court held that the officer's concerns for his safety were objectively reasonable. As such, his search was lawful under the officer safety exception and proper in scope. Larson, 88 Wash.App. at 857, 946 P.2d 1212.
¶ 11 In contrast, a search is not lawful under the officer safety exception if there are no reasons to believe that a suspect is armed and dangerous and no need for the suspect to return to the car to facilitate the investigation for a traffic stop. Glossbrener, 146 Wash.2d 670, 49 P.3d 128 (disallowing an officer safety exception when the suspect was pulled over for a headlight infraction and intervening actions rendered a search unreasonable). Further, we concluded that the officer safety exception does not apply when gunshots were heard in a location other than the suspect's vehicle, he had no companions in the vehicle, he was detained in a police van and there was no need for him to reenter his vehicle to facilitate the investigation. Bradley, 105 Wash.App. at 38, 18 P.3d 602. Finally, the exception does not apply when an officer is only aware of a potential hazard but has no articulable suspicions that a vehicle's passenger is armed and dangerous. State v. Terrazas, 71 Wash.App. 873, 878-79, 863 P.2d 75 (1993) (concluding that when an officer searched under a blanket on the lap of a backseat passenger during a stop for erratic driving he exceeded the scope of a Terry stop).
¶ 12 Importantly, in each case, a "determination of the reasonableness of an officer's intrusion depends in some degree on the seriousness of the apprehended criminal conduct. An officer may do far more if the suspected misconduct endangers life or personal safety than if it does not." State v. Rice, 59 Wash.App. 23, 27, 795 P.2d 739 (1990) (citing State v. McCord, 19 Wash.App. *1239 250, 253, 576 P.2d 892 (1978)). Additionally, "[t]here is no constitutional violation in allowing a police officer to assume a citizen's report has some basis when he is conducting an initial investigation of that complaint." State v. Rice, 59 Wash.App. at 28, 795 P.2d 739.
¶ 13 A stop based on a report of a weapon sighting is markedly different from investigative stops based on reports of drug-related activities or traffic infractions. The latter were held lawful based on the suspects' furtive movements and the presence of a passenger or the need to return to the vehicle to facilitate the investigation. But here, because the police received a legitimate citizen's report that a driver had pointed a gun from his vehicle, no furtive movements were necessary to justify the belief that Glenn's suspected misconduct endangered the safety of the officers. Pointing a gun at a victim is serious criminal conduct  the officers testified that they considered this a high-risk weapon stop. Although the police testified that they were not concerned for their safety at the time of the search because Glenn was handcuffed in the police car, they knew they had to return Glenn to his car when they found no weapon on his person. This was a cause for legitimate concern, because of the report that a gun had been pointed from the car from which they retrieved Glenn. Based on these circumstances, the officers were reasonable in their belief that a return to his car would have provided Glenn with access to a weapon thereby raising officer safety concerns anew.
¶ 14 This scenario also differs from Bradley, in which the defendant ran from the scene of the crime to his car. Here, the "scene of the crime" was Glenn's car, which reportedly carried him as he pointed a gun out the window. Further, the eyewitness here reported an actual gun sighting, whereas in Bradley, the only report involved hearing gunshots. Securing this scene required searching the car to ensure that no weapon was available to Glenn upon his return to the "scene." Had the officers returned him to his car with a weapon inside, they would not have been ensuring their own safety, or that of the surrounding community. We conclude that a credible report that a gun has been displayed from a vehicle justifies a search of that vehicle under the officer safety exception to article I, section 7 of our constitution.
II. Search Incident to Arrest
¶ 15 Alternatively, the State argues that the search was lawful because a reasonable person in Glenn's position would believe that he had been formally arrested, and the officers had probable cause to search his vehicle incident to arrest. Although the trial court did not conclude that this was a valid search incident to arrest, "[a]n appellate court may affirm a trial court's decision on any theory supported by the record and the law." Bradley, 105 Wash.App. at 38, 18 P.3d 602 (citing State v. Guttierrez, 92 Wash. App. 343, 347, 961 P.2d 974 (1998)).
¶ 16 "In making an arrest, officers may search the passenger compartment of a vehicle for weapons . . . if the vehicle was in the immediate control of the suspect at the time of  or just prior to  an arrest." Id. (citing State v. Stroud, 106 Wash.2d 144, 152, 720 P.2d 436 (1986)) (defendants were beside vehicle); State v. Lopez, 70 Wash.App. 259, 270, 856 P.2d 390 (1993) (defendant was 50 to 60 feet from vehicle). The Stroud court weighed the dangers to the officers and possible destruction of evidence against article I, section 7 privacy interests and concluded that
During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.
Stroud, 106 Wash.2d at 152, 720 P.2d 436 (emphasis added); see also State v. Boursaw, 94 Wash.App. 629, 634, 976 P.2d 130 (1999).
¶ 17 "[A] search incident to arrest is valid if there is probable cause to arrest a suspect for the relevant offense at the time of the search, even if the officer does not subjectively consider the suspect *1240 formally under arrest but merely detained." Bradley at 39, 18 P.3d 602 (citing State v. Harrell, 83 Wash.App. 393, 401, 923 P.2d 698 (1996)). Probable cause exists where the facts and circumstances known to the arresting officer are sufficiently trustworthy to cause a reasonable person to believe that an offense has been committed. Harrell, 83 Wash.App. at 399, 923 P.2d 698. Division Three of this court, has noted that "[a]ppellate court examinations of the issue of custodial arrest following McKenna have retreated from the consideration of the arresting officer's intent." State v. Radka, 120 Wash. App. 43, 49, 83 P.3d 1038 (2004) (citing State v. McKenna, 91 Wash.App. 554, 555, 958 P.2d 1017 (1998)). While the test for probable cause remains the same, Division Three looks to the perception of the detainee to determine whether an arrest is custodial:
rather than the subjective intent of the officer, the test is whether a reasonable detainee under these circumstances would consider himself or herself under full custodial arrest. Typical manifestations of intent indicating custodial arrest are the handcuffing of the suspect and placement of the suspect in a patrol vehicle, presumably for transport. . . . Telling the suspect that he or she is under arrest also suggests custodial arrest.
Radka, 120 Wash.App. at 49, 83 P.3d 1038 (emphasis added) (citing State v. Craig, 115 Wash.App. 191, 196, 61 P.3d 340 (2002) (finding custodial arrest when a detainee is told that he is under arrest and handcuffed)); (citing State v. Clausen, 113 Wash.App. 657, 660-61, 56 P.3d 587 (2002) (finding custodial arrest when a detainee is told he is under arrest and will be released after booking)). In Radka, the defendant was told he was under arrest and placed in the patrol car, but without handcuffs. He was allowed to make numerous cell phone calls while he remained in the car. The court concluded that such circumstances would lead a reasonable detainee to believe that he was not under custodial arrest. Id. at 50, 83 P.3d 1038. Consequently, although the officer had probable cause for a custodial arrest of the defendant, the lack of actual custodial arrest rendered the subsequent search of Radka's car unconstitutional. See also State v. O'Neill, 148 Wash.2d 564, 585, 62 P.3d 489 (2003) (holding that a lawful custodial arrest is a prerequisite to a search since the arrest is the authority of law justifying the search).[3]
¶ 18 The circumstances surrounding Glenn's detention are distinguishable from Radka. The citizen's report, combined with the facts and circumstances known to the arresting officers, were sufficiently trustworthy to cause a reasonable person to believe that Glenn had pointed a weapon from his car, and that the same weapon may still be on his person or in the vehicle. It was not found on his person, which suggested the weapon remained in the vehicle. Further, although the officer did not tell him that he was under arrest, and testified that his intent was only to detain him in order to investigate, a reasonable person in Glenn's circumstances would consider himself under custodial arrest and not free to leave. The officers' subjective, unspoken perception that he was not under formal arrest is irrelevant.
¶ 19 The officers had probable cause to arrest Glenn for unlawful display of a weapon and took actions that would lead a reasonable person to believe that he was under custodial arrest. Because the officers had probable cause to search for a weapon, because Glenn would have believed himself to be under custodial arrest, and because they did not unlock and search any locked containers or a locked glove compartment, we conclude that the search of Glenn's vehicle was a valid search incident to arrest.
III. Delayed entry of written findings of facts and conclusions of law
¶ 20 Glenn filed his appellate brief before the trial court issued written findings *1241 of fact and conclusions of law. He claims that because he was unable to assign error to these findings, he is prejudiced by their status as verities on appeal.
¶ 21 In reviewing findings of fact entered following a motion to suppress, this court reviews only those facts to which error has been assigned. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994). "Where there is substantial evidence in the record supporting the challenged facts, those facts will be binding on appeal." Hill, 123 Wash.2d at 647, 870 P.2d 313.
¶ 22 When findings and conclusions are not entered until after parties submit their appellate briefs, the opportunity to assign error to a finding of fact is foreclosed. But there is no error if the trial court's oral findings are sufficient to permit appellate review, and the defendant does not demonstrate any prejudice arising from the belated finding. See State v. McGary, 37 Wash.App. 856, 861, 683 P.2d 1125, (noting that the primary purpose of requiring findings is to allow the appellate court to fully review the questions raised on appeal); see also State v. Byrd, 83 Wash.App. 509, 922 P.2d 168 (1996). This court has reversed a conviction for failure to comply with Criminal Rule 3.6 when no findings and conclusions were ever entered. See State v. Smith, 68 Wash.App. 201, 208, 842 P.2d 494 (1992). Moreover, in that case, the trial court's oral opinion was a "far cry from the `comprehensive opinion' which has been fundamental to every case in which the court proceeded to address the merits of a . . . suppression issue in the absence of findings required by . . . CrR 3.6." Id.
¶ 23 Here, at the end of the suppression hearing on January 3, 2006, the trial court stated:
I agree that in a typical officer safety situation, the focus is on the initial arrest. But the thing that distinguishes this case from Bradley is that it appears that the defendant was not going to be arrested unless there was some probable cause established on the weapons brandishing charge . . . I don't believe that the reason to arrest is co-extensive with the basis for the officer safety exception. I can see how they may have decided that there wasn't sufficient probable cause to justify an arrest, yet they were still concerned enough, especially considering the very consequences if they make a miscalculation, that they wanted to double-check and make sure that even they (sic) did not know there was probable cause that there was also, in fact, not a weapon. I think that under these facts where it appears that the defendant, by all accounts, would have been released had he not been arrested, that it is reasonable for the police, in an effort to insure their own immediate surroundings, members of the public, if there were any, I guess there weren't any here, so it really comes down to the police officers to take the minimally intrusive effort of searching the car to establish whether or not there was a weapon and the marijuana was discovered in the course of that search. It was in a place and location that was necessary to review to see if a weapon was present, so for those reasons, I deny the motion to suppress.
¶ 24 The State submitted proposed findings to both Glenn and the trial court at the sentencing hearing on January 13, 2006. Defense counsel submitted handwritten objections, which were initialed by the trial court. The prosecutor testified that he sent an electronic version of the proposed findings to both the trial court and defense counsel. However, these proposed findings were not finalized and filed until the prosecutor was alerted to their absence when Glenn filed his appeal.
¶ 25 Glenn's counsel took the opportunity to review and revise all findings and conclusions when they were first presented to the trial court at sentencing and also received an electronic version of the proposed findings. For all practical purposes, Glenn's counsel was aware of the court's proposed findings and conclusions. Moreover, our review of the record indicates that the trial court's oral ruling and the proposed findings do not vary substantially from the final findings filed for this appeal; the issues raised on appeal were reflected in the proposed findings. Further, the findings and conclusions submitted with the appellate record permit appellate review. *1242 Glenn does not bear his burden of showing prejudice.
¶ 26 We affirm.
COLEMAN, BECKER, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] The O'Neill court did not engage in analysis of whether the suspect believed he was under custodial arrest. Instead, the court focused on whether he was "seized" for purposes of a Terry stop, concluding that once the officer asked the suspect to step out of his car, a reasonable person would believe that he was not free to leave, and that in fact, a seizure had occurred. The court then turned its attention to the timing of the search, concluding that it was invalid because it occurred before the officer made the arrest. State v. O'Neill, 148 Wash.2d 564, 585, 62 P.3d 489 (2003).