FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9: 55

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43736-8-II |
| Respondent, | |
| v. | |
| LANCE WILLIAM EVANS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Following a stipulated facts bench trial, Lance William Evans appeals his second degree unlawful firearm possession conviction. Evans claims that (1) the police unlawfully arrested him without probable cause and (2) his trial counsel provided ineffective assistance. We affirm because Evans failed to preserve the probable cause challenge for appeal and his trial counsel performed reasonably.

## FACTS

On March 14, 2012, at 5:58 PM, Lakewood Police Officers Jeremy Prater and Grant[1] responded to unit 17 in the Avalon Place Apartments after the neighbor living in unit 18 called 911. The neighbor had reported that the woman from unit 17, later identified as Karen Rojo,

---

[1] The record does not provide Officer Grant's first name.

came to his apartment and asked him to call 911 because a man was in Rojo's apartment waving a gun at her daughter.

Hearing this information, Officer Prater believed he was responding to a "high-risk" incident. When Officers Prater and Grant arrived at the complex two minutes later, at 6:00 PM, they proceeded to unit 17 and observed a white male through the open front door,[2] later identified as Evans, sitting on a chair just inside the apartment. The officers took positions of cover outside the apartment and directed Evans to walk out and lay face down on the ground. Evans complied. A third officer then handcuffed Evans while Officers Prater and Grant cleared the apartment, finding no other occupants—Rojo's daughter was not in the apartment.

After the officers secured the area, Officer Prater contacted the neighbor who called 911, and he located Rojo. Rojo informed Officer Prater that her daughter's friend "Lance" came to her apartment carrying a bag she described as a "man purse," and that Lance was upset because her daughter owed him money. Clerk's Papers (CP) at 68. Rojo stated that Evans waved a small black gun around and said, "No one is leaving until I get my money." CP at 68.

At 6:09 PM, Officer Prater returned to where Evans was detained, confirmed with Evans that his name was Lance, and then advised Evans of his *Miranda*[3] rights. Evans indicated that he understood his rights and agreed to speak with Officer Prater. When Officer Ryan Hamilton arrived, he secured the "man purse" for safekeeping because the residents of unit 17 denied ownership and wanted it removed. Evans eventually admitted owning the "man purse" and

---

[2] The 911 report did not identify any other details about the man, other than his being a male.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

being a convicted felon. Officer Hamilton advised Evans of his *Ferrier*[4] warnings, and Evans consented to him searching the "man purse." Officer Hamilton found three knives and a small black handgun. The officers then placed Evans in a patrol car and transported him to jail.[5]

The State charged Evans with second degree unlawful firearm possession[6] and unlawfully carrying a weapon capable of producing bodily harm.[7] Evans moved to suppress his statements, and he moved to suppress the gun due to an improper warrantless search; but he did not challenge the legality of his arrest. After a CrR 3.5 and 3.6 hearing, the trial court found Evans's statements and gun admissible at trial.

After the trial court denied Evans's suppression motions, Evans stipulated that the evidence police obtained at the apartment would be admissible at trial and that the State had sufficient evidence to convict him of second degree unlawful firearm possession; in exchange for the stipulation, the State dismissed the unlawful carrying charge. Evans specifically reserved the right to appeal the evidentiary suppression rulings. The trial court accepted Evans's stipulation and found him guilty of second degree unlawful firearm possession. Evans appeals.

ANALYSIS

I. PROBABLE CAUSE

Evans argues, for the first time on appeal, that officers unlawfully arrested him without probable cause. We disagree because based on the record before us, the officers had probable

---

[4] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

[5] The record does not indicate when the officers considered Evans formally arrested.

[6] RCW 9.41.040(2)(a)(i).

[7] RCW 9.41.270(1).

cause to arrest Evans. Therefore, Evans did not preserve this issue for appeal because he cannot show actual prejudice, and he does not satisfy RAP 2.5(a).

## A. STANDARD OF REVIEW AND RULES OF LAW

Generally, we will not entertain a claim of error not raised before the trial court. RAP 2.5(a). An exception to that general rule is RAP 2.5(a), which requires an appellant to demonstrate a manifest error affecting a constitutional right. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). Stated another way, the appellant must identify a constitutional error and show how the alleged error actually affected the appellant's rights at trial. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

To determine if an error is of constitutional magnitude, we look to whether, if the defendant's alleged error is true, the error actually violated the defendant's constitutional rights. *O'Hara*, 167 Wn.2d at 98-99. An error is manifest if it is so obvious on the record that the error warrants appellate review. *O'Hara*, 167 Wn.2d at 99-100. But appellants must also demonstrate "actual prejudice," meaning the defendant must plausibly show the asserted error had practical and identifiable consequences at trial. *Gordon*, 172 Wn.2d at 676. For an appellant to demonstrate actual prejudice by trial counsel's failure to move to suppress a warrantless arrest, she or he must show that the trial court likely would have granted the motion if made. *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995). To determine actual prejudice, that the trial court likely would have granted the motion if made, we necessarily must preview the merits of an appellant's alleged error. *See State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001).

Probable cause exists where the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed. *State v.*

*Knighten*, 109 Wn.2d 896, 899, 748 P.2d 1118 (1988). We must consider the arresting officer's special experience and expertise in evaluating the reasonableness of the officer's probable cause determination. *Knighten*, 109 Wn.2d at 899.

A custodial arrest occurs if a reasonable detainee under the circumstances would consider himself or herself under full custodial arrest; the subjective perception of the arresting officers is irrelevant. *State v. Glenn*, 140 Wn. App. 627, 638, 166 P.3d 1235 (2007). We look to several factors to determine if a detainee could reasonably consider himself or herself under full custodial arrest: whether the suspect is handcuffed, whether the suspect is placed in a patrol vehicle for transport, and whether the suspect is told that he or she is under arrest. *State v. Radka*, 120 Wn. App. 43, 49, 83 P.3d 1038 (2004).

## B. Analysis

Here, even assuming without deciding that an arrest without probable cause is an error of constitutional magnitude, Evans fails to demonstrate actual prejudice. Evans cannot show that the trial court likely would have granted the motion to suppress the arrest had Evans made the motion. Thus, he cannot satisfy RAP 2.5(a).

In *Glenn*, Division One of this court held that officers have probable cause to arrest a person when they receive a citizen's report that someone is pointing a gun at a person, and the facts and circumstances known to the arresting officers would cause a reasonable person to believe that the identified person either pointed the gun or still possessed the gun. 140 Wn. App. at 638-39. In *Glenn*, a seven-year-old boy told his mother that a man driving by pointed a gun at him, and the boy's mother called police. 140 Wn. App. at 631. The boy's mother saw a car matching what her son described, copied the license plate, and reported it to police. *Glenn*, 140 Wn. App. at 631. When police arrived and interviewed the boy, a car drove by and the boy

identified it as the same car from which the man pointed the gun. *Glenn*, 140 Wn. App. at 631. The officers stopped the car, found that the plates matched the plates reported by the boy's mother, and arrested the driver. *Glenn*, 140 Wn. App. at 631. Division One held that probable cause supported the driver's arrest because the citizen's report, combined with the matching vehicle plates, would cause a reasonable person to believe that the driver pointed the weapon from his car and still had the weapon on his person. *Glenn*, 140 Wn. App. at 638-39.

Like *Glenn*, officers here responded to a high-risk, firearm-related citizen's report that a man was waving a gun at a female in unit 17 at the Avalon Place Apartments. Within two minutes of receiving the call, officers observed a male in unit 17, verifying a portion of the citizen's report. After the officers secured the scene, they confirmed the 911 call and learned that "Lance" had waved the gun in the apartment. Officer Prater then confirmed with Evans that his name was Lance and advised him of his *Miranda* rights; after Officer Hamilton found Evans's gun in his "man purse," the officers placed him in a patrol car and transported him to jail. Like *Glenn*, probable cause supported Evans's arrest based on (1) the citizen's initial report that a man waved a gun at a woman in apartment 17, (2) the officers observed Evans inside apartment 17, (3) the officers confirmed what happened with the citizen informant 911 caller and Rojo identified the gunman as "Lance," and (4) the officers identified the man removed from apartment 17 as "Lance." Those facts, taken together, as in *Glenn*, would lead a reasonable person to believe that Evans waved a gun and still had a gun on his person. *See* 140 Wn. App. at 638-39. Thus, the officers had probable cause for the arrest.

6

Evans cannot demonstrate from the record that the officers unreasonably arrested him by immediately ordering him to the ground and handcuffing him.[8] The record shows that the officers ordered Evans to the ground and handcuffed him because he allegedly brandished a firearm just moments before they arrived. The officers placed Evans in a patrol vehicle and transported him to jail only after confirming with Rojo that Evans had waved a firearm at her daughter. The record does not indicate that officers ever told Evans he was under arrest when they first handcuffed him to secure the area, and merely handcuffing a suspect in a high-risk situation, by itself, does not constitute an arrest. *See Radka*, 120 Wn. App. at 49. Accordingly, based on the record before us, we cannot say that the trial court would have found an absence of probable cause to arrest Evans. Accordingly, Evans fails to demonstrate that the trial court likely would have granted the motion to suppress the arrest had he challenged it at trial; therefore, he does not demonstrate prejudice and fails to preserve this issue for appeal. *See* RAP 2.5(a)(3).

## II. Ineffective Assistance

Evans next argues that defense counsel provided ineffective assistance by failing to challenge the legality of his arrest and encouraging him to sign the stipulation. Defense counsel was not ineffective because, as discussed above, challenging the defendant's arrest would have been futile and agreeing to a stipulation was a strategic, tactical decision designed to achieve a favorable outcome.

---

[8] Evans conflates probable cause and reasonable suspicion—he argues that officers unlawfully arrested him, yet he mistakenly relies on reasonable suspicion cases. For example, he relies on *State v. Sieler*, 95 Wn.2d 43, 621 P.2d 1272 (1980), to argue that the officers improperly detained and questioned him based on an unreliable tip; he argues that the officers needed knowledge of the source's reliability and needed to independently corroborate the tip before detaining him. But *Sieler* is inapplicable here because it involved an officer detaining or questioning someone, not having probable cause to arrest a suspect. 95 Wn.2d at 45.

To demonstrate ineffective assistance, the appellant must satisfy the two-pronged *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Cienfuegos*, 144 Wn.2d 222, 226-27, 25 P.3d 1011 (2001). For the first prong, the appellant must show that counsel's performance was deficient, meaning that counsel's performance falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. For the second prong, the appellant must show that counsel's deficient performance prejudiced his or her defense. *Strickland*, 466 U.S. at 688. If trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot substantiate an ineffective assistance claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002), *cert. denied*, 547 U.S. 1151 (2006).

First, Evans claims that defense counsel failed to provide effective assistance because he did not challenge the legality of Evans's arrest. But as reasoned above, the officers had probable cause to arrest Evans. Because police had probable cause, any attempt by counsel to challenge the legality of Evans's arrest would have been futile. Therefore, counsel's decision not to challenge Evans's arrest was reasonable and does not constitute ineffective assistance.

Second, Evans claims that defense counsel failed to provide effective assistance by encouraging him to stipulate not only that the evidence against him was admissible, but that it sufficiently supported his guilt. He claims this "hybrid" guilty plea and fact stipulation is not a legally recognized method of resolving criminal prosecutions and deprived him of due process. But Evans's decision to stipulate to the admissibility and sufficiency of the evidence was a strategic choice to obtain more favorable treatment—Evans knowingly and voluntarily stipulated to the admissibility and sufficiency of the evidence against him in order to appeal the suppression issue. And in exchange for Evans's stipulation, the State dismissed the unlawful carrying of a fireman charge. Because Evans's stipulation strategically allowed him to appeal

8

the suppression issue and avoid an unlawful carrying of a firearm conviction, it cannot serve as a basis for an ineffective assistance claim. *See McNeal*, 145 Wn.2d at 362. Accordingly, Evans's ineffective assistance of counsel claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
JOHANSON, J.

We concur:

_____
WORSWICK, C.J.

_____
BJØRGEN, J.